UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HUBERT GEORGE COLE,

                Petitioner,

         v.

MARKWAYNE MULLIN, et al.,

                Respondents.

Case No. 5:26-cv-02578-SRM-ACCV

**ORDER GRANTING *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER [3]**

Before the Court is Petitioner Hubert George Cole's ("Cole's") *ex parte* application for a temporary restraining order. Dkt. 3. Respondents Markwayne Mullin, Todd Blanche, Todd Lyons, Andre Quinones, F. Semaia, and the United States Department of Homeland Security oppose the *ex parte* application ("Opposition"). Dkt. 9.

The Court has reviewed the parties' arguments, relevant legal authority, and record in this case. The *ex parte* application is **GRANTED**.

I.    **BACKGROUND**

The following facts are derived from the verified allegations in the Petition for Writ of Habeas Corpus, *see* Dkt. 1, the exhibits attached to the *ex parte* application, *see* Dkt. 3-1–3-2, and the exhibits attached to the Opposition, *see* Dkt. 9-1–9-2. Cole is a Honduran native and citizen. Dkt. 1 at 9. He immigrated to the United States when he was 11-years

-1-

old with his mom and sisters. *Id.* Cole was incarcerated as a youth during which he joined the Crips. *Id.* He eventually disassociated himself from the Crips. *Id.* In August 2007, Cole was shot in the head and abdomen in a drive-by shooting by a rival gang member. *Id.* at 10. As a result of his injuries, he has metal plate in his skull. *Id.* Cole continues to receive medical care for his injuries and has a CT scan scheduled for May 18, 2026. *Id.* at 2, 10.

In 2008, the Department of Homeland Security ("DHS") commenced removal proceedings against Cole. *Id.* at 10. After some protracted litigation, the immigration judge ordered Cole removed to Honduras but deferred removal under the Convention Against Torture. *Id.* at 11; *see also* Dkt. 3-2 at 9. In 2014, Cole was placed on supervision. *Id.* at 11. Since then, Cole has complied with all the conditions of his supervision, has appeared at his scheduled immigration check-ins, has complied with his conditions of release, and has not been arrested, charged, or convicted of any crimes. *See id.* at 11–12.

On May 8, 2026, Cole appeared at his regular check-in with Immigration and Customs Enforcement ("ICE"). *Id.* at 12. Without prior notice, ICE served Cole with a document titled "Notice of Removal." Dkt. 3-2 at 21. It states in full the following: "This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to <u>Mexico</u>." *Id.* The Notice of Removal is signed by an unidentified "DO," which presumably stands for deportation officer. *See id.* ICE then took Petitioner into custody. *See id.* at 13. According to his counsel, ICE has not afforded Cole an informal interview since he has been returned to custody. *Id.*

On May 13, 2026, Cole filed a Petition for Writ of Habeas Corpus asserting several claims against Respondents. Dkt. 1. Most relevant here, Cole asserts that Respondents violated the revocation procedures under 8 C.F.R. § 241.4(l), in part, because the person who revoked his release did not have the authority do so, and that that his potential removal to Mexico violates, among other things, the Fifth Amendment's Due Process Clause. Dkt. 1 at 46–50. With respect to the latter claim, Cole alleges that since the change in administration, "DHS has initiated an aggressive new enforcement campaign targeting people on orders of supervision, particularly persons with post-removal final orders of

removal who, like Petitioner, have lived for many years in the community without incident." *Id.* at 18. In a memo entitled "Guidance Regarding Third Country Removals, DHS does not need to provide notice or process to a noncitizen before removal to a third country so long as it has diplomatic assurances that he will not be persecuted or tortured. *Id.* The memo further instructs immigration officers not to affirmatively ask noncitizens whether he will be afraid of being removed to the desired third country. *Id.* A few months after that initial memo was issued, ICE issued further guidance on how to implement these procedures. *See id.* at 19. That guidance directs immigration officers to serve noncitizens with a "Notice of Removal," and that they have authority to effectuate removal within 24 hours after serving notice. *Id.* In exigent circumstances and with appropriate approval, immigration authorities may remove the noncitizen to a third country with a mere six hours. *Id.*

Now before the Court is Cole's *ex parte* application for a temporary restraining order. Based on the two claims described above, he argues is entitled to his immediate release from immigration custody and that Respondents should be barred from removing him to Mexico without notice or an opportunity to raise any fear-based claims. Dkt. 3-1 at 20–21, 24–26. Respondents oppose the *ex parte* application. Dkt. 9.

This matter is now ready for decision.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) governs temporary restraining orders. A temporary restraining order is an extraordinary remedy meant to preserve the *status quo* and to prevent irreparable harm "just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). To obtain a temporary restraining order, the movant must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors merge when a temporary

restraining order is sought against the government, as is true here. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

In cases where there may be a strong showing on the balance of hardships but a weaker showing on the likelihood of success, a movant may still obtain a temporary restraining order under the Ninth Circuit's sliding-scale approach. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). Under this sliding-scale approach, a movant must show (1) there are serious questions going to the merits, (2) there is a likelihood of irreparable injury, (3) the balance of hardships tips sharply towards the movant, and (4) the injunction is in the public's interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "'Serious questions' are ones 'that "cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation."'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) (quoting *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023)). "They 'need not promise a certainty of success, nor even present a probability of success, but must involve a "fair chance of success on the merits."'" *Id.* (quoting *Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). Even under this sliding-scale approach, a movant must still "make a showing on all four prongs." *Cottrell*, 632 F.3d at 1135.

The movant carries the burden of persuasion and must make a clear showing of entitlement to the requested relief. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). Given the exigent nature of a temporary restraining order, a movant can rely on allegations in a verified complaint, exhibits, declarations, or affidavits, even if inadmissible under the Federal Rules of Evidence. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011) ("A verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief."), *overruled on other grounds by Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc); *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of

-4-

preventing irreparable harm before trial."); *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) ("A verified complaint or supporting affidavits may afford the basis for a preliminary injunction."). Unverified allegations in the pleadings and unsupported and conclusory statements are not enough to prevail on a motion for a temporary restraining order. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (reversing district court's order granting preliminary injunction where it relied on unsupported and conclusory statements); *Greenberg v. Guzman*, No. CV 14-00866, 2014 WL 12569551, at *2 (C.D. Cal. July 28, 2014) ("A motion for preliminary injunction must be supported by '[e]vidence that goes beyond the unverified allegations of the pleadings.'") (quoting 9 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2949 (2011)).

## III.   DISCUSSION

Cole argues he is entitled to temporary injunctive relief on several of his claims. As discussed below, Cole is entitled to the full scope of his requested relief on his claims that Respondents violated the revocation procedures under 8 C.F.R. § 241.4(l), in part, because the person who revoked his release did not have the authority do so, and that that his potential removal to Mexico violates, among other things, the Fifth Amendment's Due Process Clause. Dkt. 1 at 46–50. The Court thus does not reach whether he is entitled to the same relief on his other claims.

### A.   Likelihood of Success of Merits

#### 1.   Violation of revocation procedures

Title 8 C.F.R. § 241.4 addresses the authority to keep a noncitizen who has been ordered removed in custody and grant release or parole under 8 U.S.C. §§ 1231(a)(6) and 1182(d)(5)(A). *See* 8 C.F.R. § 241.4. Section 241.4(l) establishes the circumstances and procedures for revoking a noncitizen's release. Under Section 241.4(l), a noncitizen's release may be revoked under two circumstances. *See* 8 C.F.R. § 241.4(l)(1)–(2).

First, release may be revoked if the noncitizen violates a condition of release. *Id.* § 241.4(l)(1).

-5-

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

*Id.*

Second, the "Executive Associate Commissioner" or "district director" may exercise their discretion and revoke release if any of the following occur:

(i) The purposes of release have been served;

(ii) The alien violates any condition of release;

(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

*Id.* § 241.4(l)(2). While Section 241.4(l)(2) explicitly authorizes the "Executive Associate Commissioner" or "district director" to revoke release, "the analysis is complicated by the fact that the immigration landscape changed after the September 11 terrorist attacks, and [S]ection 241.4 'refers to previous Immigration and Naturalization Service [('INS')] position titles.'" *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025) (quoting *Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017)). After the September 11 attacks, Congress passed the Homeland Security Act, which abolished the Immigration and Naturalization Service, 6 U.S.C. § 291(a), and transferred all functions related to the detention and removal of noncitizens to the Secretary of Homeland Security—the head of the United States Department of Homeland Security ("DHS"), *id.* § 251.

Considering that references in Section 241.4 refer to former INS position titles, title 8 C.F.R. § 1.2 ("Section 1.2") was promulgated to define previous INS terms, phrases, and position titles. *See* 8 C.F.R. § 1.2. Before March 1, 2003, "Commissioner" used to refer to "Commissioner of the Immigration and Naturalization Service," and "district director" referred to "the district director or regional service center director." *See id.* Today, "Commissioner" refers to the "Director of U.S. Citizenship and Immigration Services, the Commissioner of U.S. Customs and Border Protection, and the Director of U.S.

Immigration and Customs Enforcement, as appropriate in the context in which the term appears." *See id.* "[D]istrict director" now means "asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge." *See id.*

Considering Sections 1.2 and 241.4(l), the relevant inquiry is whether the Director of U.S. Citizenship and Immigration Services; the Commissioner of U.S. Customs and Border Protection; the Director of U.S. Immigration and Customs Enforcement; or asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge revoked Cole's release.

Cole argues he is likely to succeed on his claim that Respondents violated the procedures for revoking his release because, among other things, the person who revoked his release did not have the authority to do so under 8 C.F.R. § 241.4(l)(2). As an initial matter, the Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim. *See Khoury v. Noem*, 5:26-cv-00113, 2026 WL 846040, at *3 (C.D. Cal. Jan. 22, 2026) ("The Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim."); *Singh v. Chiang*, No. ED CV 25-3024, 2025 WL 4058328 at *4 (C.D. Cal. Dec. 15, 2025) ("The court construes the government's failure to address this argument as a concession to petitioner's argument.").

In any event, it does not appear Respondents complied with the procedures established under 8 C.F.R. § 241.4(l) when they revoked Cole's release. There is no dispute that Respondents did not have the authority to revoke his release under Section 241.4(l)(1) because Cole did not violate a condition of his release. Respondents thus only had authority to revoke his release only under Section 241.4(l)(2). But according to the Notice of Removal, an unidentified deportation officer determined that Cole should be removed to Mexico. There is no evidence in that notice that this deportation officer holds the position of Director of USCIS; Commissioner of CBP; Director of ICE; asylum office director;

director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge. The Court concludes that Cole's release was not revoked properly because the deportation officer did not have the authority to do so under Section 241.4(l)(2).

Cole has clearly shown he is likely to succeed on this claim based on this theory.

### 2. Third-Country Removal

When a noncitizen is ordered removed from the United States, an immigration judge must identify a removal country or alternative countries to which the noncitizen can be removed. *See Hadera v. Gonzales*, 494 F.3d 1154, 1156 (9th Cir. 2007); *see also* 8 U.S.C. § 1231(b)(2)(A)–(B); 8 C.F.R. § 1240.12(d). If the Attorney General is unable to remove the noncitizen to the designated country, it may remove a noncitizen to what is colloquially known as a third country. *See* 8 U.S.C. § 1231(b)(2)(A)–(B); 8 C.F.R. § 1240.12(d). Before the government can do so, however, it must notify the noncitizen of the right to apply for asylum and withholding of deportation and an opportunity to be heard. *See Andriasian v. Immigr. & Naturalization Serv.*, 180 F.3d 1033, 1041 (9th Cir. 1999); *see also* 8 U.S.C. § 1231(b)(3)(A).

Cole argues that Respondents are trying to remove him on an expedited basis to Mexico, a country that was not designated by the immigration judge in the removal order, without an opportunity to raise any fear-based claims. The Court again construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim. *See Singh v. Chiang*, No. ED CV 25-3024, 2025 WL 4058328 at *4 (C.D. Cal. Dec. 15, 2025) ("The court construes the government's failure to address this argument as a concession to petitioner's argument.").

In any event, the Court briefly addresses the merits of this claim. In 2013, an immigration judge ordered Cole removed to Honduras but deferred removal under the Convention Against Torture. Although Respondents have the authority to remove Cole to a country not designated by the immigration judge, they must afford Cole adequate procedures to ensure he has the opportunity to raise any fear-based claims with respect to

the desired country of removal. The fact that ICE is seeking to remove him to Mexico coupled with DHS' new policies for expedited third-country removals raises grave concerns that Respondents will attempt to remove Petitioner to a Mexico based solely on its assurance that Cole will not be persecuted or tortured. But Ninth Circuit authority and the Immigration and Nationality Act require that the government provide, at a minimum, notice of his right to apply for asylum and withholding of deportation and an opportunity to be heard on any fear-based claim. *See Andriasian*, 180 F.3d at 1041. As one district court aptly stated, "[t]his policy contravenes Ninth Circuit law" and "[i]t would be impossible to comply both with Ninth Circuit precedent and the policy." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 729 (citing *Andriasian*, 180 F.3d at 1041). Accordingly, the Court concludes that Petitioner is entitled to habeas relief on this claim.

Cole has clearly shown he is likely to succeed on this claim. In turn, this *Winter* factors weighs in favor of granting Cole temporary injunctive relief.

### B. Irreparable Harm

""It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). As discussed, Cole has made a clear showing that Respondents likely deprived him of his procedural due process rights when the revoked his release and will deprive him of his due process rights to raise a fear-based claim before removal to Mexico. "'[N]o further showing of irreparable injury is necessary.'" *Pinchi*, 792 F. Supp. 3d at 1037 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)); *see also Valencia Zapata*, 2025 WL 2578207, at *3 ("It follows inexorably from the conclusion that Petitioners' detention without a pre-detention hearing is likely unconstitutional, that they have also carried their burden as to irreparable harm.") (citation modified).

Accordingly, this *Winter* factor weighs in favor of granting Cole temporary injunctive relief.

## C.    Balance of Equities and Public Interest

In addition, Cole and "[t]he public ha[ve] a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at \*3 (N.D. Cal. June 14, 2025) (quoting *Jorge M.F. v. Wilkinson*, No, 21-cv-01434, 2021 WL 783561, at \*3 (N.D. Cal. Mar. 1, 2021)). He also stands to suffer considerable harm if he remains unlawfully detained given that Respondents did not afford him with adequate procedural safeguards before his re-detention. Respondents, by contrast, will suffer minimal injury with a short delay in detaining Petitioner. "Faced with a conflict between minimally costly procedures and preventable human suffering, the Court has little difficulty concluding that the balance of hardships tips decidedly in Petitioner['s] favor." *Valencia Zapata*, 2025 WL 2578207, at \*4.

Accordingly, this *Winter* factor weighs in favor of granting temporary injunctive relief.

## D.    Scope of Relief

A temporary restraining order is meant to preserve the *status quo* and to prevent irreparable harm before a hearing can be held on a preliminary injunction. *Granny Goose*, 415 U.S. at 429. For purposes of a temporary restraining order, "[t]he status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). Moreover, the Ninth Circuit has "long held that injunctive relief must be tailored to remedy the specific harm alleged." *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015).

Here, Cole's last uncontested status was the moment before his re-detention. Thus, a temporary restraining order requiring his immediate release would return him to the *status quo*. *See Valencia Zapata*, 2025 WL 2578207, at \*4 (collecting cases).

-10-

**E.     Bond**

A court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court "with discretion as to the amount of security required, *if any*."'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). A district court "'may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm'" to the nonmovant. *Id.* (quoting *Jorgensen*, 320 F.3d at 919). The nonmovant is not absolved of its "obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).

Here, Respondents have not presented any evidence that would show a bond is necessary in this case. The Court thus exercises its discretion and waives the bond requirement.

**IV.     CONCLUSION**

For the above reasons, the *ex parte* application is **GRANTED** as follows:

-11-

1. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ORDERED** to immediately release Petitioner from immigration custody by May 17, 2026, at 8:00 p.m. Respondents must file a declaration by May 18, 2026, at 9:00 a.m. confirming Petitioner has been released from immigration custody. Respondents are further **ORDERED** to place Petitioner on the same conditions of parole before his re-detention, if any existed before the re-detention.

2. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are temporarily **ENJOINED** from revoking Petitioner's release unless it complies with the procedures outlined under 8 C.F.R. § 241.4(l).

3. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ENJOINED** from removing Petitioner to a third country without notifying Petitioner of the third country to which Respondents are seeking removal, without notifying him that he can raise fear-based claims, and without an opportunity to raise any fear-based claims as required under 8 U.S.C. § 1231(b)(3) and Ninth Circuit law;

4. This order will remain in effect until June 8, 2026, at 5:00 p.m. This order may be extended for good cause or with Respondents' consent;

5. Respondents are **ORDERED TO SHOW CAUSE**, in writing, why this temporary restraining order should not be converted into a preliminary injunction. This response is due by May 15, 2026. Petitioner may file a response by May 22, 2026. The Court will set a hearing only if necessary.

//
//
//

6.     Petitioner's counsel is **DIRECTED** to orally notify Respondents' counsel of this order and to serve a copy of this order on Respondents' via email by May 17, 2026, at 12:00 p.m.

**IT IS SO ORDERED.**

Dated: May 16, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE